## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

### BUFFALO DIVISION

| | |
|---|---|
| Trenise McTyere and Lucille Clark, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>Apple Inc., a California Company,<br><br>        Defendant. | ) CASE NO. 21-cv-1133<br>)<br>)<br>)<br>) **CLASS ACTION**<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Trenise McTyere ("Plaintiff McTyere") and Plaintiff Lucille Clark ("Plaintiff Clark," and together with Plaintiff McTyere, "Plaintiffs"), by their attorneys allege upon information and belief, except for allegations pertaining specifically to Plaintiffs, which are based on personal knowledge:

### INTRODUCTION

1.    Apple Inc. ("Defendant" or "Apple") is one of the world's largest computer and phone manufacturers and retailers, and includes among its myriad services the option for consumers to **Rent** or **Buy** movies, television shows, music and other media (the "Digital Content") for a fee.

2.    Defendant sells movies ("Movie Content"), shows ("Show Content") and music ("Music Content," and together with Movie Content and Show Content, "Digital Content.") via the iTunes store and related applications or "apps."  Some of the Digital Content is also available for "Rent."

1

3.     Consumers can purchase Digital Content by clicking on a "Buy" button.  Once bought, the Digital Content is housed in a "Purchased Folder."

4.     Except for content Defendant owns outright, the Digital Content purported to be sold on iTunes is licensed to Apple by the Digital Content's owner.  These licensing arrangements mean that, unlike in a true sale, Defendant can never pass title to the purchasing consumer. Accordingly, when a licensing agreement terminates for whatever reason, Defendant is required to pull the Digital Content from the consumers' Purchased Folder and it does so without prior warning to the consumer.

5.     In other words, unlike a Best Buy or Target store that obtains title from a Digital Content's owner, which it then passes on to a purchaser for value, Defendant's licensing arrangements prevent it from ever doing so.  Moreover, Defendant's sale of Digital Content that it does not own is made more egregious because, as demonstrated below, Apple charges just as much for it as (or even more than) the store that actually passes title of Digital Content to consumers, which access can never be revoked.

6.     Thus, Defendant is misleading consumers into believing it is selling them Digital Content, even though it is only providing them with a license.  Defendant likely misrepresents its "sale" transactions for one reason: if it called the transaction what it really is, some type of sublicensing arrangement, it could not charge nearly as much as it charges for the Digital Content by misrepresenting to consumers that is a sale.

7.     Defendant's material misrepresentations relating to its "sale" of Digital Content has caused Plaintiffs and the Class (as defined below) members to sustain damages by overpayment of content they can never own.

2

## JURISDICTION AND VENUE

8.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

9.      Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]"

10.     The aggregate amount in controversy is at least $5,000,000.

11.     Minimal diversity is met because Plaintiffs are citizens of New York and Defendant is a citizen of California.

12.     Venue is proper because Plaintiff McTyere and many Class members reside in this District and Defendant does business in this District and State.

13.     A substantial part of events and omissions giving rise to the claims occurred in this District.

14.     This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## CLASS ACTION ALLEGATIONS
## (LOCAL RULE 23(b))

15.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

16.     The proposed class is defined as:

> All persons who purchased Digital Content from Defendant within the State of New York during the applicable statute of limitations and through class certification and trial (the "Class").

17.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

18.     Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

19.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

20.     Plaintiffs' claims are typical of the claims of the Class in that they, like all Class members, overpaid for the Digital Content.

21.     Plaintiffs, like all Class members, have been damaged by Defendant's misconduct in that they overpaid for Digital Content.  Furthermore, the factual basis of Defendant's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

22.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

23.     Among the questions of law and fact common to the Class are whether Defendant:

     a.     Deceived consumers by misrepresenting that it was selling them Digital Content when, in fact, it was really only licensing it to them;

     b.     Overcharged consumers for Digital Content it purported to sell them when, in fact, it was really only licensing it to them;

b.  Breached the covenant of good faith and fair dealing by overcharging consumers for Digital Content it purported to sell them when, in fact, it was really only licensing it to them;

c.  Violated New York consumer protection law; and

d.  Whether Plaintiffs and the Class were damaged by Defendant's conduct and, if so, the proper measure of damages.

24.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

25.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy.  Moreover, given that the "sale" of Digital Content was carried out in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

26.     Even if the Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard

which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## PARTIES

27.     Plaintiff McTyere is a citizen of Niagara Falls, New York in Niagara County.

28.     Plaintiff Clark is a citizen of Syracuse, New York in Onondaga County.

29.     Defendant Apple Inc. is a California corporation with a principal place of business in Cupertino, California in Santa Clara County and is a citizen of California.

30.     During the relevant statutes of limitations, Plaintiffs purchased the Digital Content within this District and/or State for personal consumption and/or use in reliance on the representations that access to the Digital Content upon its purchase would not be revoked by Defendant or others.  Despite Defendant's representations that it had sold them Digital Content, Plaintiffs did in fact lose purchased Digital Content because it was merely licensed to them.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

31.     Through its iTunes apps, consumers can "Buy" or "Rent," and subsequently access their Digital Content, in a variety of ways via a smart phone, computer or tablet.  Consumers can also access their Digital Content by using a palm-sized, plastic black box manufactured by Defendant called Apple TV.  When connected to a television set, it can be used to "Buy" or "Rent," and subsequently access, among other things, the Digital Content.

32.     In the event that a consumer desires to "Rent" Movie Content, Defendant advertises that, for a fee of around $5.99, the consumer will have access to the Movie Content for 30 days and then for 48 hours after the consumer first starts to watch the Movie Content.

33.     For a much higher fee of around $19.99, Defendant offers the option to "Buy" the Movie Content.

6

34.     Below is a representative example of the options available to a consumer on Defendant's "iTunes Store" app at the digital point-of-sale of Movie Content:



35.     In the event that a consumer desires to "Buy" a television show ("Show Content"), Defendant will sell it for a fee of around $3.99 per episode.

36.     For a much higher fee of around $29.99, Defendant offers the option to "Buy" an entire season of Show Content.

37.     Below is a representative example of the options available to a consumer on Defendant's "iTunes" app at the digital point-of-sale of Show Content:



38.     In the event that a consumer desires to "Buy" a music song ("Music Content"), Defendant will sell it for a fee of around $1.29 per song.

39.     If a song is part of an album of Music Content, Defendant offers the option to "Buy" the album for a fee of around $11.99.

40.     Below is a representative example of the options available to a consumer on Defendant's "iTunes" app at the digital point-of-sale of Music Content:



41.     When a consumer chooses the option to "Buy" on the page of the Digital Content by clicking on the "Buy" button, the Digital Content instantly becomes available in the consumer's Digital Content library without the consumer needing to accept any terms and conditions pursuant to a clickwrap agreement.

42.     Regardless of which device is used to access Digital Content, or which "iTunes" app is used to buy or rent the Digital Content, the app provides a tab or folder labeled "Purchased." Clicking on the word "Purchased," takes the consumer to the Digital Content it owns.  Below are several examples:



Movies Purchased with the "movies iTunes" app on Apple TV.



Movies purchased with the "iTunes" app on a MacBook Air laptop computer.



Movies purchased with the "iTunes Store" app on an iPhone.

43. "Purchased" folders that store consumers' Show Content and Music Content also exist on Defendant's various "iTunes" apps.

44. Reasonable consumers will expect that Defendant is using the words "Buy" and "Purchased" throughout the iTunes Store and apps in the same manner as those words are used, and understood, by the hundreds of millions of people throughout the world that speak English; that is, to "Buy" means to acquire possession over something,[1] and once the "Buy" transaction has been completed, that "something" is then considered to have been "Purchased."[2]

45. Once "Purchased," like any other product obtained by a consumer after payment of its sales price, a seller should not be able to revoke that consumer's access to it. In other words,

---

[1] Buy Definition, merriam-webster.com/dictionary/buy (last visited Oct. 15, 2021).
[2] Purchased Definition, merriam-webster.com/dictionary/purchased (last visited Oct. 15, 2021)("to obtain by paying money or its equivalent").

just like Best Buy or Target cannot come into a person's home to repossess a movie or show DVD (or music CD) that such person purchased from it, Defendant should not be able to remove Digital Content from its customers' Purchased folders.

46.     Unfortunately for those consumers who chose the "Buy" option, this is deceptive and untrue.  Rather, the ugly truth is that Defendant does not own all of the Digital Content it purports to sell.  In fact, a portion of the Digital Content it claims to sell is actually owned by others who license it to Defendant, thereby making Apple a sublicensor of Digital Content.

47.     To make matters worse, Defendant charges as much, or more, money for Digital Content it is merely licensing, versus sellers who are actually passing title to such property forever. As shown below, Defendant is now "selling" the Sonic the Hedgehog movie for $14.99, while Target is selling that same movie, which a consumer truly owns and can keep forever, for $9.99.



Sonic the Hedgehog Movies "Sale" price of $13.99.

12



Sonic the Hedgehog Movies "Sale" price of $9.99.

48.     Despite charging a price that is commensurate with a sale of property, which is not subject to revocation, once Defendant's licensing agreement with a content owner terminates, Apple must revoke the consumers' access and use of the Digital Content without warning.  Apple has done so on numerous occasions, including with respect to Digital Content owned by Plaintiffs, leaving consumers without the ability to enjoy their already-bought Digital Content.

49.     Defendant's representations are misleading because all of its actions relating to the purported sale of Digital Content give the impression that such content is purchased – *i.e.* the person owns it – when in fact that is not true because it is actually licensed.  As such, Defendant may revoke access to the Digital Content at any time and for any reason should its license to said

13

content be terminated.

50.     In so representing the "Purchase" of Digital Content as true ownership of the content, Defendant took advantage of the (1) cognitive shortcuts made at the point-of-sale, *e.g.* Rent versus Buy and (2) price of the Digital Content, which is akin to an outright purchase versus a rental.

51.     Though some consumers may get lucky and never lose access to any of their paid-for media, others may one day find that their Digital Content is now gone forever.  Regardless, all consumers have overpaid for the Digital Content because they are not in fact owners of the Digital Content as represented by Defendant, despite having paid the amount of consideration typically tendered to "Buy" the product.

52.     Defendant's representations that consumers are truly purchasing their Digital Content are designed to – and do – deceive and mislead consumers.  The following quote from a Forbes article explains the disappearing Digital Content issue with respect to Defendant's sale of Movie and Show Content:

> A woman from Illinois contacted me to say that she has lost multiple iTunes TV show and movie purchases over time, with varying outcomes when she's taken each case up with Apple. Timeless Season 1 disappeared, but was reinstated after sufficient 'nagging'. A selection of movie purchases/code redeems were also lost: Hercules (2014), How To Train Your Dragon, Gone Girl, The Intern, If I Stay, The Final Girls, Romancing The Stone and Birdman. All were eventually restored, but only after 'a week of calls and live chats' with Apple. Or two weeks in Hercules case.

John Archer, *Apple Responds To Disappearing iTunes Movie Purchases Issue*,

FORBES (Sep. 17, 2018).

53.     The above complaint is not new news for Defendant.  Indeed, Defendant has been aware for years now that consumers are routinely misled by the manner in which it "sells" Digital Content.  In a different Forbes article about this issue, Apple admits to being on notice about the

14

problem:

> Reports have started to emerge of Apple completely deleting films from iTunes accounts even when they've been bought, not merely rented. And when people complain about this, they're receiving an astonishing message from Apple telling them that iTunes is just a "store front," and so Apple isn't to blame if a film studio decides it no longer wants to make its titles available on iTunes.

John Archer, *Apple Is Deleting Bought Films From iTunes Accounts - And Don't Expect A Refund*, FORBES (Sept. 13, 2018).

54.     Defendant has sold more Digital Content, and at substantially higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

55.     The consumers' belief that they truly own the Digital Content has a material bearing on price or consumer acceptance of Defendant's digital content delivery services because consumers are willing to pay substantially more for Digital Content that they believe they can access at any time and for an indefinite period.

56.     The value of the Digital Content that Plaintiffs and the Class members purchased and consumed was materially less than its value as represented by Defendant.

57.     Had Plaintiffs and the Class members known the truth, they would not have bought the Digital Content from Defendant or would have paid substantially less for it.

58.     As a result of the false and misleading representations, the Digital Content is sold at a premium price, compared to other similar Digital Content and services represented in a non-misleading way.

## CLAIMS

### FIRST CLAIM

### VIOLATION OF NEW YORK GBL § 349
#### (On Behalf of Plaintiffs and the Class members)

59.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

61.     Defendant's conduct alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the Class members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting Digital Content.

62.     Defendant misleadingly, inaccurately, and deceptively represented that the Digital Content it sold to Plaintiffs and the Class members had been "Purchased" and, as such, that it would be available for viewing and/or listening indefinitely, when in fact Defendant knew that the Digital Content could become unavailable due to licensing restrictions imposed by content creators or other reasons.

63.     Defendant's improper consumer-oriented conduct—including the labeling and advertising of the Digital Content —is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class members to purchase and pay a premium for the Digital Content and to purchase the Digital Content when they otherwise would not have had they known they were merely obtaining a license to said content.

64.     Defendant made the untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.     Plaintiffs and the Class members have been injured inasmuch as they paid a

16

premium for Products contrary to Defendant's representations.   Accordingly, Plaintiffs and the Class members received less than what they bargained or paid for.

66.     Defendant's advertising and products' packaging and labeling induced Plaintiffs and the Class members to buy the Digital Content and to pay a premium price for it.

67.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of GBL §349(a) and Plaintiffs and the Class have been damaged thereby.

68.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, as well as interest on those amounts, and attorneys' fees and costs.

69.     Plaintiffs and the Class members seek statutory damages under GBL § 349 of $50 per unit purchased.

70.     Plaintiffs, on behalf of the Class members, request that the Court enjoin Defendant from continuing to employ the unlawful acts and practices alleged herein.  If the Court does not restrain Defendant from engaging in these acts and practices in the future, Plaintiffs and the Class members will be harmed in that they will continue to believe they are buying Digital Content for viewing and/or listening indefinitely when, in fact, the Digital Content can be made unavailable at any time because it is merely being licensed to them.

## SECOND CLAIM
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiffs and the Class members)

71.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

72.     N.Y. Gen. Bus. Law § 350 ("GBL § 350") provides, in part, as follows:

17

False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

73.     GBL § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

74.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning the Digital Content.

75.     Plaintiffs and the Class members have been injured inasmuch as they relied upon the labeling, packaging and advertising, and because of that paid a premium for the Products. Accordingly, Plaintiffs and the Class members received less than what they bargained or paid for.

76.     Defendant's advertising, packaging and product labeling induced Plaintiffs and the Class members to buy the Digital Content.

77.     Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

78.     Defendant violated GBL § 350 by representing that the Digital Content it sold to Plaintiffs and the Class members had been "Purchased" and, as such, that it would be available for viewing and/or listening indefinitely, when in fact Defendant knew that the Digital Content could become unavailable due to licensing restrictions imposed by content creators or other reasons.

79.     Defendant's conduct constitutes multiple, separate violations of GBL § 350.

80.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the platform where the Digital Content is purchased and stored.

81.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

82.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class members are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, as well as interest on those amounts, and attorneys' fees and costs.

83.     Plaintiffs and the Class members seek statutory damages under GBL § 350 of $500 per unit purchased.

84.     Plaintiffs, on behalf of the Class members, request that the Court enjoin Defendant from continuing to employ the unlawful acts and practices alleged herein.   If the Court does not restrain Defendant from engaging in these acts and practices in the future, Plaintiffs and the Class members will be harmed in that they will continue to believe they are buying Digital Content for viewing and/or listening indefinitely when, in fact, the Digital Content can be made unavailable at any time.

**THIRD CLAIM**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class members in the Alternative)**

73.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74.      Plaintiffs, on behalf of themselves and the Class members, bring a claim for unjust enrichment.

75.      Defendant's conduct violated, *inter alia*, state and federal law by advertising, marketing, and selling the Digital Content while misrepresenting and omitting material facts.

76.      Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling the Digital Content at the expense of, and

to the detriment or impoverishment of, Plaintiffs and the Class members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity and good conscience.

77.    Plaintiffs and the Class members conferred significant financial benefits and paid substantial compensation to Defendant for the Digital Content, which was not as Defendant represented it to be.

78.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiffs' and the Class members' overpayments.

79.    Plaintiffs and the Class members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and the Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class, respectfully request the Court to enter an Order:

A.    certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.    declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    declaring that Defendant has committed the violations of law alleged herein;

D.    providing for any and all injunctive relief the Court deems appropriate;

E.    awarding monetary damages, including but not limited to any statutory, compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F.      providing for any and all equitable monetary relief the Court deems appropriate;

G.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

H.      awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

I.      awarding pre- and post-judgment interest to the extent the law allows; and

J.      providing such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

October 18, 2021                                    Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
Carlos F. Ramirez
cramirez@reesellp.com
(application for admission to be submitted)
Charles D. Moore
cmoore@reesellp.com
(application for admission to be submitted)
100 West 93rd Street, 16th Floor
New York, New York 10025-7524
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, Calfornia 90211
Telephone: (310) 393-0070

*Counsel for Plaintiffs*
*and the Proposed Class*

21